The next case on our calendar is J.S. by and through his mother versus Children of America. Good morning. Morning. May it please the court, my name is Jeff Herman from Herman Law on behalf of the plaintiff appellant. My client is a young boy who alleges that he was sexually abused at a daycare type school called Children of America. This appeal deals with several rulings on evidentiary issues made by the judge, which we think result are a result of an abuse of discretion, along with comments made by the judge. You realize, of course, that we give great deference to decisions on evidence by the trial judge. Yes, I do understand that, Judge. But I think in this case, I think it's clear that the judge abuses discretion. First of all, any one of the three evidentiary issues stand on their own as an abuse of discretion that I think would warrant a remand. But the combination of all three, along with the judge's comments, created an unfair imbalance of evidence in this case. On one hand, the judge precluded this boy from testifying and that in his initial disclosure, he identified the perpetrator as an assistant teacher who worked at Children of America, who had braids in his hair that was excluded by the judge. On the other hand, the judge allowed the defendant's expert witness to testify that children are notoriously unreliable and that they're subject to implanted memories. That created a vacuum that left really one conclusion the jury could make, which is that somebody must have implanted this person in this child's head because he wasn't able to explain, nor the witness is able to testify. You take the position that the judge was wrong and when the judge said to you, you asked the question and you say, but this was not responsive to the question that we were you. Were you trial counsel? Yes, I was. And so you say that the judge was completely wrong. But as I read the question that you asked, it's a somewhat ambiguous question that if it had been asked in a somewhat different form, it would have been absolutely clear that the that the the medical expert psychiatrist could not have answered it in the manner that he did. He was going beyond it. But the question you asked was, and I think I have it quoted here, Doctor, would you agree that the sexual abuse that J.S. describes committed on him by Jefferson Cabrera would be a bad thing for J.S.? So the way you the way you put it, committed on him can be interpreted as an assertion in the question that this actually happened. If you had phrased the question saying, Doctor, you heard J.S. testify that these things were done to him, assuming that were true. Would that be a bad thing for the child? Then there's no way that the doctor could answer that question by by getting into children lie, because that's just not raised by the question. But when you phrase the question saying that this sexual abuse was committed on him, the question arguably, arguably proposes that it was committed on him. And and I can't agree that it was clearly outside the scope of the question for the doctor to say something to the effect that I can't agree that it was necessarily committed on him because children notoriously. So is that question objected to by opposing counsel? No, no. But your honor, the first part of your supposed responsive answer by Dr. Kaplan in that that I can't answer that. I don't know if he was abused, would have been fine. But then he offers in an opinion about that goes really to credibility. And there's several reasons why that does not come in. First of all, even if I open the door to a credibility issue, which I don't think I did, the law does not permit an expert then to go into that issue and take the place of the role of the jury and talk about credibility issues. That's number one. Number two, the question I asked did not open the door. And only to the extent what you're saying is that, well, he could have said, yeah, I don't know that he was abused. But what he did is he went further and he said, well, children are notoriously unreliable. That's a direct comment on the credibility. And this this the second circuit has already has talked about then a similar case, namely versus New York, where an expert got up and testifying that was dealing with police testimony and said, well, police tend to tell the truth. And the court excluded that that's getting into the province of the jury. And then then then this actually went further. I'm sorry. What if there'd been a scientific study that said police are generally unreliable when they testify? Well, notwithstanding that, you all can use that as a data point in determining whether Officer X is telling the truth in this matter, right? Well, there was no there wasn't testimony here about any scientific study. This was a complete surprise. A trial with some reference to what he was aware of based on his training and experience. Well, he said there was a famous book by by Dr. Sisi. That doesn't mean a Dauber standard. And and and there could be and this was just a very generalized opinion. This expert wasn't even talking about any factors in this case that would actually apply to suggestibility or an implanted memory. There are no facts in this case. And so and there's other reasons why why this evidence was inappropriate to come in. As I said, first of all, this was a surprise. This this testimony was not in the doctor's opinion. And with regard to the implanted memory, I have we had filed a motion in limine, which the court granted before the trial that the defendant was precluded from raising this issue of an implanted memory. Yet the court allowed it and refused to strike it. That was unfairly prejudicial to my client. We were not able to defend that. And as I said, if you combine that, allowing this testimony from Dr. Kaplan, suggesting that someone implanted this memory in this child's head and then and the judge precludes the the the plaintiff or the family who heard the initial disclosure from saying, oh, his original statement. The first day he said it was a man at the school creates this vacuum. And so the jury has to wonder, well, how did he all of a sudden go from? Well, I was touched also. And I was touched by a man at the school who fits this description. It further complicated unfairly this case for for the for the for the plaintiff in that the court also precluded us from talking about from preventing evidence about Jefferson Cabrera's admission and conviction that he was a pedophile, because in explaining what happened when this child made the disclosure to his aunt and his cousin that he was abused by a teacher, an assistant teacher at the school, the aunt told his mother, his mother called her friend who was had a children at the school. And the friend said to the mother, there's a man at the school who was just convicted of molesting another little boy. So the mother take looks up, looks up the name, shows the picture to her son. He says, yeah, that's the guy. That's the man who touched me. None of that information went to the jury. And so there was no way the jury was going to given all these rulings. How was a jury? They didn't have the facts. They weren't able to make that decision. On top of that, we then have the judge's comments where when talking about the child's testimony with the judge says, well, there's a credibility issue here, totally inappropriate for a judge to say that. The judge never said that about any other witness in the case. Yet he directs it when he's talking about the testimony that's coming in from the boy. And then further in talking about the defense's defense in this case as to whether or not there's a credible statement, the judge goes on to say that it's a legitimate defense. This combination of rulings by the judge and statements by the judge, we believe, create an unfair imbalance of evidence in this case. Thank you. Thank you. We'll hear from COA. May it please the court. My name is David Rutherford. I'm representing a defendant, Children of America, NIAC, LLC. On the point about Dr. Kaplan's testimony. This is a classic example of asking one too many questions on cross-examination and not phrasing the question in the right way. As your honor pointed out, it was it was an ambiguous question. The way to ask that question would have been to the extent you even needed that testimony. But let's say you wanted to ask the question. You ask it in a hypothetical. Doctor, assume the child was molested. Wouldn't that be a bad thing? Then that would have boxed him in to give the answer he gave. But as Judge Brissetti pointed out in ruling on plaintiff's motion to strike, what he was trying to do was box in the doctor to, in effect, saying this happened and the doctor pushed back against that. Why didn't you object to the question? I didn't find I didn't. I thought the doctor would handle it the way he handled it. So I let it go. And in fact, he handled it exactly the way I thought he would. So what he said was, look, sex abuse is terrible, it's a crime, but we don't know that happened here. And we don't know what happened here because children who are three years old are unreliable now. Counsel talks about credibility. Those words were never used in the trial. It was all about reliability. The judge was very clear because we had to go into this issue on the plaintiff's expert, which was, is he going to be able to say, I treat sex abuse victims and I can tell you he's telling the truth? And the judge said, you can't talk about credibility, whether the witness on the stand is telling the truth. And our guy didn't say that either. Is there a law to the effect that when a three year old and supposing you had a three year old witness and the three year old witness testifies to whatever, is there a law that that an expert in in child's development, infant development, infant psychology may not may not say something to the effect that that children of that age are unreliable? No, you can talk about and the law is clear. You can talk about reliability. You can't talk about credibility. And both the plaintiff's expert and our expert talked only in terms of reliability. What's not mentioned is in the plaintiff's expert's testimony, he was able to go in and say these what the plaintiff is describing is consistent with someone who has suffered sexual abuse. He couldn't say I've evaluated kids who have sexual abuse and I'm telling you he's telling the truth. And our guy didn't talk about. I listened to the plaintiff. He's lying that that's the province of the jury. And that was never invaded. All he said is, look, this is the field. These witnesses are unreliable. And I can't I don't know what happened. I mean, he was clear by saying we don't know what happened here. So on Dr. Kaplan's testimony, I think that the judge and he, by the way, gave a reasoned opinion in the record as to why he was concluding that. And as your honor pointed out at the beginning of this argument, evidentiary rulings are, you know, that it has to be a clear abuse of discretion. They're generally left alone. And this is a well thought ruling. But what was the basis for excluding the testimony about the identification of the agent of the corporation? OK, so that's character evidence and character evidence is generally not, as I understand it, that there was some evidence proffered or proposed to be introduced before the jury that would say this is how this is what happened  Identity was never an issue in this case. The plaintiff, the child got up on the stand, told what happened and told who did it to him. We never argued, well, if he was abused, it wasn't abused by Mr. Cabrera. We said we that was not an issue identity. But if you want to talk about identity first, the child identified it. Then we had the aunt come in and the aunt told the story about how he remembered it in the bathtub. Then we had the mother come in and the mother told how she identified him through a Facebook picture. So put before the jury were all these issues. What they wanted to bring in was a video to kind of bolster all that, which was unnecessary because they got in what happened through the boy, how he remembered it through the aunt and how he was identified through the through the mother. On the issue of the subsequent, all of that was through your expert, although I'll be elicited by a question from the other side deemed to be unreliable. That was well, there was there was a mountain of evidence, frankly, Your Honor, as to why this couldn't have happened. The testimony in the case was there were video cameras in every single room. The teacher testified that she was with him during nap time every day. There was never a time that she wasn't there. There was other witnesses who came in and said Jefferson Cabrera was never in the room alone with children. There was other witnesses. You know, a whole mountain of reasons why this didn't happen. And on the other side, the only thing, the only piece of evidence that the plaintiff put forward was that the child who never complained at the time remembered three years later in the bathtub that this must have happened. So the jury. Could have easily taken all this evidence, looked at that and looked at this evidence and just said, you know what, we believe that it didn't happen. And that's where they came out. Now, the issue of the subsequent conviction, there's a you got to get by three different in order to get that in. As Judge Brissetti pointed out, you got to get by 415. You got to get by 404 B and then you got to get by 403. And at each stage, he went through why it doesn't qualify to come in under 415, why it doesn't qualify to come in under 404. And then even if you got by those, he did a reasoned analysis of exactly why under 403 the prejudicial value would outweigh the probative value. And on that, I think, you know, the committee's somehow is is an effort by the court approved by Congress to sort of tilt the scales under 405. Under 415, though, you have to be a party. So 415 says that's an issue that we would wrestle with if we decide to. I mean, if we reach this issue. Right. So so he said he got the party piece wrong. Then you got to go to you still got to get it in under 404 and 403. You got to go through each analysis. So under 404, you've got its character evidence. And, you know, the advisory committee, when they passed 404, it's very interesting what they said, which is character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man, to punish the bad man because of their respective characters, despite what the evidence in the case shows actually happened. Now, it was a conviction, not just character. It was convicted of the very offense that J.S. said he did to him. But but the judge found, well, there's two things on that. First of all, he when accused of the second offense, which happened years later, he admitted it and it was a different set of facts. Judge Brissetti actually went through and said, I don't find these crimes to be substantially similar for these reasons. The only thing that's similar is that they both involved little boys that had their penises touched. That's not enough because the way he did it was different. And the case law says they have to be so similar that, in effect, it's like a signature. It's like he uses this modus operandi each time. And Judge Brissetti performed that analysis and said, I don't find it substantially similar. And here he gave you know, he gave his reasons. And again, the standard is such that those. What were the differences? OK. In this context of this case, the boy alleged that he was abused during nap time in front of a whole room of kids and on videotape that the the molester reached under his pants while talking to him and touched him. In the other case, it was in a private setting in which the molester pulled down the kid's pants and while distracting him with a cell phone so that he wouldn't realize what was going on. And so Judge Brissetti put their different. That's not the signature. That's not like the signature would be. I always use my cell phone to distract the kids while I molest them. The only reason time I'm sorry. Most were these events in time. One was alleged to have taken place in 2010 and the other in 2013. So over three years, he can't change his ammo. Well, then you won't use it for ammo. It only comes in if it's to show ammo. So if it's a different ammo, if you take the touching of the penis as the act, how one accomplishes that. Either through distraction of the cell phone or at nap time when one might be less aware. I don't see a heck of a lot of difference in that. Well, actually, the case from this court, the case law from this court says to approve alleged similar acts share unusual characteristics. Much more is demanded than the mere repeated commission of crimes of the same class. Well, that's what you're talking about here. That specific violation for touching penises as opposed to engaging in sexual assault. But it needs to be more than that is what the judge found. And that's. Well, it's for us to review that, right? Sure. But that's 404. Now, even if you find that it would qualify under 404, you still got to be go beyond. You still got to get by 403. And in 403, that's probative versus prejudicial. And what what the court found in this case was that. I want the jury to consider what happened here. I want them to weigh the evidence, which is the video cameras and the teachers there and him never being there. But I don't think that the jury will ever get beyond the fact that he's later molested a kid. They'll see him as a child molester and never think about anything else. And therefore, I think the prejudicial part of that far outweighs the probative value, which is that the only probative value is that he touched another. But a value is that this guy was touching the penises of little boys. He touched the penis of one boy. Two that we know of. No, he didn't touch this boy. In this case, he said that. And the jury found that it didn't happen. So he's only touched, as far as we know, one boys. But I did. That's right. Denied in this case. A jury weighed the evidence in this case and found that he didn't do it. Thank you. Mr. Herman, you reserve three minutes for rebuttal. Thank you. First, I want to deal with some very important facts that were misstated by the appellee, both in his brief and today before this court, and that is that the appellee states that the mother and the aunt both had and did come into court and testify about the disclosure and identification. That's not true. That's a false statement. That's what this case is about. The aunt and the mother were not allowed to testify about the identification. All that the aunt was allowed to say in court was that the boy said his little sister touched him and the aunt said, no one's supposed to touch your your your privates. And he said, oh, someone touched my privates. That's all she was allowed to say. What was excluded was the fact that the the the aunt and we didn't need to bring the video in. We were content with just testimony about this. But the aunt immediately brought in her adult son and they said, what happened? And he said, a man at my old school, my assistant teacher touched my privates and and he described him having braided hair. That did not come in the trial, despite that counsel just said it did. The second thing that he said was that the mother came in and testify how she identified him, but that did not come in. The mother, because what really happened is the mother heard this and called her friend who was at the school and said, oh, this guy, a teacher fits this description, was just convicted of molesting a little boy. The mother looked it up, saw the picture and showed that to her son. All that the jury was allowed to hear is that the mother heard someone touched her son and that the mother brought this picture out of nowhere and showed it to her son. The story made no sense. It makes no sense when you hear it in a vacuum with all these other critical facts. He wasn't allowed to testify to the chain of going to the school, finding out about the conviction. Correct. Not allowed. It never came in. She was not allowed. And then on the convictions themselves, the standard isn't substantially similar. We have under 415-04-4B, it's enough that the Congress has said we are going to, in cases dealing with sex abuse, allow this corroborating evidence because it is relevant and it's not unfairly prejudicial. And so under 415, there's a case we cite from another circuit, the KFC case, where they said it would make no sense to say you only in a civil case against the perp, can you bring in evidence of other sexual abuse? It certainly applies if the case you're dealing with sexual abuse, even if the case is against a corporation, it should still apply. And that makes sense. But even under 404, evidence in a sexual abuse case of another of another crime similar is admissible to corroborate the story. And that was critical in this case, because, again, the way that the court had left out all this key evidence about the identification and I'll finish here, about the identification, but allowing the expert to talk about this whole thing about implanted memories, even though there was no evidence about any implanted memory in this case, there was no evidence or no facts that anyone suggested to this kid. There were no facts that he, anyone implanted a memory. And counsel today, this morning, said he knew what his answer was going to be. That's why he didn't object. He knew that Dr. Kaplan was going to say there was an implanted memory, despite the fact, and this is in the record, that there was a motion in limine and counsel understood and agreed he would not raise the implanted memory. So it's a little disturbing to hear that he knew what the answer was going to be and allowed his expert to violate the motion in limine. Thank you. Thank you. Thank you both. So I'd like to ask another question of Mr. Rutherford. It was my impression that when you were arguing, I thought that you told us that the aunt and the mother were both permitted a trial to tell the entire story of how it came about, that the that the boy identified, identified this person as the as the abuser. And I was surprised when you said that, because it was my and that you said the only thing that was excluded was the video. And I was surprised because I thought that was not the case. And your adversary gets up and tells us that you misled us in saying that. So what's your answer to that? My answer is what I what I said was through the three witnesses, I said the boy himself testified exactly what happened to him. The aunt testified about what was remembered in the bathtub. And the mother talked about identifying him through the picture and the friend. So I didn't say the aunt. He never said to the aunt that gave any identifying information. It was the three. My point to your honors was through these three witnesses, everything the video would have established was established through these three witnesses. That's the point I was making. Thank you. Thank you both. We'll reserve decision.